IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06 C 0321 |
| ALFRED CHRISTOFFER, et al. | ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union") filed this lawsuit to enforce a labor arbitration award against defendants, Alfred Christoffer, Julie Christoffer, Christoffer Enterprises, Inc. ("Enterprises"), Bral Restoration Services, Inc.("Bral Services"), and Bral Restoration, LLC., ("Bral Restoration"). On June 9, 2006, the Union filed the pending motion for summary judgment (Dkt. No. 24). For the reasons stated below, the court grants the Union's motion.

BACKGROUND

Defendant Alfred Christoffer was the sole owner and officer of the business Enterprises, whose name he changed to Christoffer Restoration Group, Inc. ("CRG") as of 1999, but continued to conduct the same business (hereinafter "CRG/Enterprises"). (Pl. LR 56.1¶¶ 4-5.) Julie Christoffer, Alfred Christoffer's wife, was never an officer, owner, or operator of

1

CRG/Enterprises. (Def. LR 56.1¶ 9.) Julie Christoffer established her own business, Bral Services, in 1998, and later established Bral Restoration in 2004. (Pl. LR 56.1¶ 6.)

On August 28, 1997, Alfred Christoffer on behalf of Enterprises entered into a collective bargaining agreement ("CBA") with the Union. (Pl. LR 56.1¶ 8.) Julie Christoffer was not a signatory to the CBA in any capacity nor was her businesses, Bral Services and Bral Restoration. (Def. LR 56.1¶ 8.) Pursuant to an "evergreen" provision, the CBA automatically renewed each year subject to written cancellation by one of the parties during a designated window of time. (Pl. LR 56.1¶ 9.)[1] The CBA also contained an arbitration clause. The Illinois Secretary of State administratively dissolved CRG/Enterprises on April 6, 2004. (Pl. LR 56.1¶ 5.) As a result of the dissolution, CRG/Enterprises did not perform any work between June 1, 2004 and May 31, 2005. (Def. LR 56.1¶ 10.)

On June 15, 2005, the Union notified all the defendants by letter that the Union considered the defendants "sufficiently interrelated as to make all of them bound to and liable for the obligations created by the contract between Enterprises and th Union." (Pl. LR 56.1¶ 11.) Furthermore, the Union alleged in the notification that it believed the defendants violated various provisions of the CBA between June 1, 2004 and May 31, 2005 and that a hearing would take place in front of a joint arbitration board ("JAB") on June 30, 2005 to address the grievance. (Pl. LR 56.1¶ 11.)

In response, the Union received three letters dated June 20, 2005, one from counsel for

---

[1] The defendants deny without any citation to material in the record the allegations in the paragraphs 9, 10, 12, and 13 of the Union's LR 56.1 Statement of Uncontested Facts. Denials of factual allegations that do not cite to the record are not sufficient to dispute 56.1 Statements, and so the court accepts allegations in paragraphs 9, 10, 12, and 13 as admitted. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003).

Alfred Christoffer, and two from the same counsel this time representing Bral Services and Bral Restoration, respectively. In the letter on behalf of Alfred Christoffer, counsel stated that Enterprises was dissolved as a corporation in 2004 and no longer exists as a legal entity. Counsel explained further that "there is no such corporate entity that can respond to your alleged violations at the Arbitration on June 30, 2005." (Pl. Ex. F-1.) In the letters on behalf of Bral Services and Bral Restoration, counsel asserted that Bral Services and Bral Restoration had never been signatories to any agreement with the Union and that the Union had no jurisdiction to require Bral Services or Bral Restoration to appear at any arbitration hearing. (Pl. Exs. F-2, F-3.) The Union sent a letter to counsel for Alfred Christoffer, Bral Services, and Bral Restoration on June 24, 2005, explaining that the "claim against all of the individuals and businesses is that each of them is liable under the contract Mr. Christoffer signed on behalf of Christoffer Enterprises" and stating that the Union intended to "go forward with the claims against the individuals and businesses, and they can make whatever arguments they choose about their corporate status or anything else." (Pl. Ex. G.)

None of the defendants or their representatives attended the June 30, 2005 arbitration hearing, despite having received notice of the hearing and being named specifically as parties to the arbitration. (Pl. LR 56.1¶ 12.) After the hearing, the JAB issued a written decision in favor of the Union, ruling that CRG/Enterprises, the Christoffers, Bral Services, and Bral Restoration were "one and the same and jointly responsible for the contracts and obligations to each other" and had violated the CBA. (Pl. Ex. D.) The JAB ordered the defendants to pay $419,00.70 in damages. (Pl. Ex. D.)

The Union mailed the award to the defendants on July 28, 2005, along with a letter

3

urging compliance. (Pl. LR 56.1¶ 15.) In addition, the Union arranged for personal service of the award along with another letter urging compliance on September 14, 2005. (Pl. LR 56.1¶ 15.) Alfred and Julie Christoffer both received the award shortly after July 28, and Julie Christoffer was personally serviced in September. (Pl. LR 56.1¶ 15.) None of the defendants has satisfied the damage award or otherwise complied with the JAB decision by challenging the arbitration award within 90 days of the decision. (Pl. LR 56.1¶ 16.) Subsequently, on January 19, 2006, the Union filed this lawsuit to enforce the arbitration award.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Moreover, the evidence relied upon must be

4

competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

ANALYSIS

The only issue presented in the Union's motion for summary judgment is whether the defendants have waived all affirmative defenses relating to the validity of the arbitration award by failing to move to vacate the award before the expiration of the 90-day statute of limitations. When a defendant fails to move to vacate an arbitration award within the prescribed limitations period for such a motion, the defendant waives any affirmative defenses to the validity of the arbitration award. *See, e.g., Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 430-31 (7th Cir. 1998); *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). Affirmative defenses include arguments that the arbitration board lacked jurisdiction over the defendant to render an award or that the defendant did not sign the collective bargaining agreement. *Sullivan*, 87 F.3d at 871. A challenge to the court's subject matter jurisdiction, however, may be raised at any time. *Rabine,* 161 F.3d at 429.

Contending that the defendants received notice of the arbitration hearing, chose not to attend, and never challenged or complied with the award, the Union argues that the defendants cannot now challenge the validity of the arbitration award before this court by presenting arguments they should have raised before the JAB or during the 90-day statute of limitations. In response, the defendants assert that their arguments challenge the court's subject matter jurisdiction rather than the validity of arbitration award. According to the defendants, there was no contractual basis to bind any of the defendants to the CBA with the Union—an argument that the defendants contend can be raised at any time—and without a contract binding the defendants

5

there is no subject matter jurisdiction. The defendants base their "no contract argument" generally on the allegations that (1) CRG/Enterprises was dissolved before the arbitration hearing and so allegedly there was no CBA between the Union and Enterprises at the of the alleged violations, and (2) Julie Christoffer, Bral Services, and Bral Restoration were neither signatories of the contract. In addition, the defendants contend that it is the court's role, rather than the JAB's, to make a legal determination that the Christoffers, Bral Services, and Bral Restoration are alter egos of CRG/Enterprises and can be held liable for contracts executed by CRG/Enterprises, even though they were not signatories or parties to the contract.

Whatever the merits of the defendants' arguments that they were not parties or signatories to the contract, the defendants waived their arguments by failing to challenge the JAB decision within 90 days. *See Rabine*, 161 F.3d at 431-32; *Sullivan*, 87 F.3d at 871. The defendants had notice and opportunity to raise these arguments before the JAB or during the 90-day period following the rendering of the arbitration award but chose not to do so. *See Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers and Allied Craftworkers v. Gianakas*, No. 03 C 5744, 2005 WL 1705803, *4 (N.D. Ill. July 15, 2005). The defendants failed to challenge the validity of the arbitration award within the 90-day period and cannot belatedly raise these arguments to be considered on the merits in this court.

Additionally, the defendants' arguments that there was no agreement or no valid agreement are not jurisdictional and thus do not fit the exception in Seventh Circuit law that allows challenges to the court's subject matter jurisdiction at any time in the enforcement proceeding. *See Rabine*, 161 F.3d at 430-31; *Sullivan*, 87 F.3d at 871. The defendants contend that there must be a contract for this court to have jurisdiction under § 301(a) of the Labor

Management Relations Act ("LMRA"), arguing that the LMRA provides jurisdiction only for violations of contracts between an employer and a labor organization representing employees. Here, the defendants assert, there are no contracts, and so there can be no jurisdiction.

Whether or not the CBA bound the parties is an open question, and thus this court has jurisdiction. However, the statute of limitations issue is a threshold inquiry that the court must address before the court addresses the merits of the arbitration award. Unfortunately for the defendants, under Seventh Circuit law, the time to challenge whether there was a contract was the 90-day period following their receipt of the arbitration decision. The Seventh Circuit, which has binding authority on this court, has not accepted the defendants' "no contract" argument that the 90-day statute of limitations is inapplicable where a defendant is a non-signatory or non-party to the CBA. Instead, the Seventh Circuit holds, as have several district courts in the Northern District of Illinois, that a non-signatory or non-party defendant to the CBA at issue in the arbitration must still raise any challenge to the defendant's status as a legally bound entity to the CBA, *e.g.*, an alter ego to the signatory, before the JAB or in the 90 days after the rendering of the arbitration award. *See, e.g., Rabine*, 161 F.3d at 430 (waived argument that there was a lack of valid "employer" under statute by not timely challenging arbitration award); *Sullivan*, 87 F.3d at (waived non-signatory and non-party arguments by failing to challenge award within 90-day time period); *Gianakas*, 2005 WL 1705803 at * 4 (waived non-signatory challenge); *Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers and Allied Craftworkers v. Nagel*, No. 05 C 325, 2005 WL 1651814, *2 (N.D. Ill. Jun. 30, 2005) (waived non-signatory challenge). Only where a defendant did not receive notice of the arbitration or award, the defendant was not a party to arbitration hearing, or where the Union knew at the time of the arbitration that the

7

defendant was not legally liable but brought the arbitration against the defendant anyway in bad faith would the Seventh Circuit excuse the failure of a defendant to adhere to the 90-day statute of limitations. *See Rabine*, 161 F.3d at 433; *Nagel*, 2005 WL 1651814 at *3-*4. The defendants try to analogize their situation to that of one of the parties, Rabine & Sons, in *Rabine*. As applied to Rabine & Sons, the Seventh Circuit held that the arbitration award was not enforceable against Rabine & Sons because they were not a party to the CBA *and* they were not a party before the arbiter. *See Rabine*, 161 F.3d at 433. Unlike Rabine & Sons, each of the defendants were given notice and were a party to the arbitration hearing. Therefore, under the applicable Seventh Circuit caselaw, the defendants had to present their arguments that they were not parties to the CBA within the 90-day period.

The court acknowledges that the defendants have cited to a Second Circuit case that holds otherwise, that regardless of the statute of limitations an arbitral award cannot be confirmed against a non-signatory without a threshold determination by the district court that the non-signatory is an alter ego or otherwise legally bound to a party to the arbitration agreement. *See Local Union No. 38 Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.,* 357 F.3d 266, 268 (2d Cir. 2004). The court, however, must follow Seventh Circuit caselaw, regardless whether other Circuits have differed in their application of the law. The court's interpretation of Seventh Circuit caselaw is that even purported non-signatories to a contract can waive their challenge to an arbitration award if they do not abide by the 90-day statute of limitations, they have notice, and the Union acted in good faith. In this case, the parties concede that the defendants had notice of the arbitration hearing and award, and there is no evidence in the record that establishes that the Union brought its grievance in bad faith or with belief that the

8

defendants were not bound by the CBA. The defendants have waived all their arguments[2] that CRG/Enterprises, Julie and Alfred Christoffer under the absence of allegations to pierce the iercing of the corporate veil theory, Bral Restoration and Bral Services are not bound to the CBA and the arbitration award is invalid. As the Seventh Circuit has stated, "If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up." Rabine, 161 F.3d at 434.

The defendants also contend that the statute of limitations period should be extended under 710 Ill. Comp. Stat. § 5/12, alleging a reason to believe based upon discovery from this case that the arbitration award was obtained through fraud, corruption, or undue means. The fraud, corruption, or undue means cited by the defendants consist of the supposed lack of evidence that CRG/Enterprises was the originator of any of the alleged jobs at issue in the hearing, the allegedly unsubstantiated award, and the alleged pattern and practice by the Union of providing arbitration notices to companies or individuals who have no relationship to the Union. To support their assertion of fraud, corruption, undue means, the defendants assert that on July 10, 2006 they received the Union's final responses to their discovery, which "indicated, among other things, that the Union never had any contractual relationship with the Defendants, the testimony before the JAB was not under oath, [and] there existed no legitimate basis to substantiate the $419,000 amount of the award. Claiming these discoveries to be recent, the

---

[2]The waived arguments are: (1) that CRG/Enterprises was dissolved during the period of the alleged violations and not a party to the CBA; (2) that the Illinois Business Corporation Act precludes the Union's action against CRG/Enterprises; (3) that Alfred and Julie Christoffer are not subject to personal liability and there is no evidence to warrant piercing the corporate viel; (4) that Alfred and Julie Christoffer, Bral Services, and Bral Restoration are non-signatories and non-parties to the CBA; (5) that the court should have made the alter-ego determination and (6) that the defendants could raise the "no contract" argument at any time.

defendants assert that the 90-statute of limitations was triggered at that point of these discoveries under 710 Ill. Comp. Stat. § 5/12. Section 5/12 states that an application shall be made within 90 days after delivery of a copy of the award to the applicant, "except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known." 710 Ill. Comp. Stat. § 5/12(b).

The defendants cannot succeed in extending the statute of limitations on purported grounds of corruption, fraud, or other undue means. The evidence in the record demonstrates that the defendants knew or should have know about most of these facts by the time the defendants received the award. First, the defendants themselves alerted the Union to the alleged lack of contractual relationship with the Union in letters from June 20, 2005, predating the arbitration hearing by 10 days. Second, the defendants were provided with the decision by the JAB regarding the award, which breaks down the basis for the arbitration award with a table listing the types of unpaid contributions and their dates. (Pl. Ex. D.) There is no reason why the defendants could not have raised challenges based on these grounds upon receipt of the arbitration award. In addition, the allegations that the witness testimony was not under oath is irrelevant; testimony before an arbiter is not required to follow federal rules. *See R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150*, 02 C 0471, 2004 WL 1073177. *5 n.3 (N.D. Ill. May 12, 2004) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-58 (1964). Furthermore, defendants do not assert that testifying witnesses at the arbitration had lied. The rest of defendants' allegations of corruption, fraud, or other undue means are purely speculative, including the defendants' belief that the Union has a pattern and practice of providing arbitration notices to non-parties with whom they do not have a

relationship. The defendants without any supporting evidence also use the exception to the 90-day statute of limitations for corruption, fraud, and undue means to float several undeveloped and conclusory arguments about the merits of the arbitration award. With this argument, the defendants have tried to achieve an unfair end-run around the 90-day statute of limitations that the court will not allow.

## CONCLUSION

Accordingly, the court grants the plaintiff's motion for summary judgment. In accordance with the arbitration award, defendants are required to must pay the plaintiff awarded damages $419,008.70, interest on the award of 10 % a year since June 30, 2005, and all costs and legal fees incurred in this lawsuit. Parties should follow Local Rule 54.3 with regard to attorneys' fees and costs. The case is terminated.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 5, 2006